**Stuart Reiser, Esq.**
**Attorney ID No. 1505-1980**
**SHAPIRO, CROLAND, REISER**
**APFEL, & DI IORIO LLP**
Continental Plaza II
411 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-3900
(201) 488-9481 (Fax)
sreiser@shapiro-croland.com
Attorneys for Plaintiff,
Aspen Stratford Apartments
Company, LP

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASPEN STRATFORD APARTMENTS COMPANY, LP | |
| Plaintiff, | Civil Case No.: |
| v. | **Civil Action** |
| CITY OF NEWARK, NEWARK HOUSING AUTHORITY, NEWARK DEPARTMENT OF NEIGHBORHOOD and RECREATIONAL SERVICES, RAS J. BARAKA, individually, and in his capacity as Mayor of the City of Newark, BAYE ADOFO-WILSON, individually, and in his capacity as Deputy Mayor of Economic & Housing Development for the City of Newark, KEITH D. KINARD, individually, and in his capacity as Executive Director of the Newark Housing Authority, CLIFFORD GODFREY, individually, and in his capacity as Chief Operations Officer of the Newark Housing Authority, PATRICK COUNCIL, individually, and in his capacity as Director of the Newark Department of Neighborhood and Recreational Services, JOHN DOE 1-10 JANE DOE 1-10 and ABC CORP.1-10, fictitiously named individuals and entities, | **VERIFIED COMPLAINT** |

Defendants.                    :
                               :
—————————————————————————      :

Plaintiff Aspen Stratford Apartments Company, LP ("Aspen") alleges and says:

### SUMMARY OF CLAIM AND BASIS FOR RELIEF

1.      This action seeks emergent relief to remedy the egregious and unlawful violation of Aspen's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and for the violation of 42 U.S.C. §1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et. seq.  As detailed below, without having afforded Aspen any opportunity to address alleged public health and safety concerns, which concerns are unfounded, the defendant City of Newark, through the actions of the individual defendants, including but not limited to the Mayor of Newark, Ras J. Baraka, has precipitously, and in contravention of its own Ordinances and applicable law, condemned two (2) multi-family dwelling apartment buildings owned by Aspen, and are in the process of relocating all of the tenants of the buildings.  The foregoing actions are in violation of the applicable ordinances and regulatory procedures enacted by the City of Newark, which require that advance written notice of proposed action be given to the property owner, that the building owner then be afforded a hearing, and that factual findings then be made to support such actions before stripping the property owner of its property rights.

2.      The foregoing actions by the defendants are a subterfuge for their own failures to provide the citizens of Newark with a safe environment and to properly police the area surrounding Aspen's property.

3.      As addressed below, Aspen has owned and operated the apartment buildings at 2-8 Stratford Place and 18-22 Stratford Place since 1978, in compliance with all applicable laws. Approximately three (3) weeks ago, the apartment buildings were thoroughly inspected by the

U.S. Department of Housing and Urban Development ("HUD"), the federal agency responsible for the oversight of the buildings as a condition to the continued provision of rent subsidies that the federal government provides to the residents under Section 8 of the Housing Act of 1937 (42 U.S.C. § 1437f), which authorizes the payment of rental housing assistance to private landlords funded through Section 8 grants.  The apartment buildings were found to be in compliance with HUD requirements, meaning that HUD passed both buildings following a comprehensive inspection and found them to be safe and habitable.  Any construction or repair issues cited within the HUD inspection report as requiring correction have and continue to be addressed by Aspen. Notwithstanding the foregoing, the City of Newark has taken the extreme and unlawful action of condemning the apartment buildings and directing the tenants to vacate their homes without following the City's own procedures, which are specifically set forth in the City's Housing Code. Indeed, the defendants are using Aspen as a scapegoat to cover up their own failure to provide the resources needed to protect this neighborhood, and for allowing the neighborhood to be a haven for drug dealers and criminals of all types.  As such, defendants have unlawfully and recklessly abrogated and interfered with Aspen's Constitutional rights, and have exceeded the bounds of their own powers.  Because the City of Newark has not provided the protections afforded to all property owners under both State and Federal law, Aspen is entitled to an order temporarily restraining and enjoining the City of Newark and its agents and officials from continuing with the condemnation efforts and from engaging in any action in furtherance thereof, including the relocation of the tenants to other housing, pending a hearing to determine if there are immediate health and safety concerns that are a basis for such condemnation.  Absent injunctive relief, Aspen and its tenants will be irreparably harmed.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343, and 1367.

5.      The venue for this action is properly set in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §1391.

## THE PARTIES

6.      Aspen is a limited partnership operating under the laws of the State of New Jersey.

7.      Defendant City of Newark (the "City" or "Newark") is a municipal corporation organized under the laws of the State of New Jersey.

8.      Defendant Newark Housing Authority ("NHA") is a non-profit organization and the largest public housing authority in the State of New Jersey.

9.      Defendant Department of Neighborhood and Recreational Services ("NRS") is a government agency existing as part of the government of the City of Newark.

10.     Defendant Ras J. Baraka (the "Mayor") is a resident of the State of New Jersey and at all times relevant hereto has acted in his capacity as Mayor of the City of Newark.

11.     Defendant Baye Adofo-Wilson is a resident of the State of New Jersey and at all times relevant hereto has acted in his capacity as Deputy Mayor of Economic & Housing Development of the City of Newark.

12.     Defendant Keith D. Kinard is a resident of the State of New Jersey and at all times relevant hereto has acted in his capacity as the Executive Director of the Newark Housing Authority.

13. Defendant Clifford Godfrey is a resident of the State of New Jersey and at all times relevant hereto has acted in his capacity as Chief Operations Officer for the Newark Housing Authority.

14. Defendant Patrick Council is a resident of the State of New Jersey and at all times relevant hereto has acted in his capacity as Director of the Newark Department of Neighborhood and Recreational Services.

15. Defendants, John Does 1-10 and ABC Corporations 1-10, are individuals or entities who acted in concert with defendants in the performance of the acts complained of herein. The identities of John Does 1-10 and ABC Corporations 1-10 are not presently known. This Complaint will be amended to include the actual names of these defendants if and when Aspen identifies them during the course of discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

16. Aspen is the owner of two (2) residential multi-family dwelling apartment buildings located at 2-8 and 18-22 Stratford Place in Newark, New Jersey (the "Subject Property").

17. The Subject Property, located in the Stratford neighborhood of Newark, consist of a total of seventy-five (76) multi-family dwelling units, including fourteen (14) one-bedroom units, forty-seven (48) two-bedroom units, and fourteen (14) three-bedroom units.

18. The Subject Property is current on all required multi-family dwelling and other certifications and registrations with the City, New Jersey and HUD.

19. The Subject Property consists entirely of Section 8 housing and operates under a Housing Assistance Payments contract ("HAP Contract") from HUD.

20.     The HAP Contract is executed between the Contract Administrator – the New Jersey Housing and Mortgage Finance Agency – and Aspen, pursuant to the Multifamily Assisted Housing Reform and Affordability Act of 1997.

21.     The HAP Contract was recently renewed for a period of five (5) years, commencing on January 1, 2014.

22.     Under the HAP Contact, HUD maintains a funding obligation of $718,448, an amount sufficient to provide housing assistance payments for approximately one (1) year.  Under the contract, HUD also agrees to provide additional funding for annual increments, if any, as long as Aspen abides by all HUD regulations and requirements.

23.     The Subject Property has been and remains in compliance with all HUD regulations and requirements.

24.     The Subject Property provides affordable housing to over 300 low-income residents and provides a habitable residence with common area electric, heat, hot water and potable water.

25.     The rent roll for the Subject Property is $73,888 a month, with maximum funding of $886,524 in 2015, assuming that the buildings are fully occupied through December 31, 2015.

26.     Aspen has an outstanding mortgage on the Subject Property from PNC Bank in the original principal amount of $2,242,200.00.  The current balance owed on the mortgage is $553,308.71 and Aspen is obligated to make monthly payments of $22,316.21 due on the first of each month.

27.     Among the tenants who reside at the Subject Property are approximately 158 school-aged children who attend public and other schools in and around the Stratford Neighborhood and the City.

## THE HISTORY OF PURPORTED VIOLATIONS, ABATEMENTS, AND ENFORCEMENT

28.     As made clear by the Mayor in his many public pronouncements, and in the news media reports of his various press conferences, one of Mayor's announced political "priorities" is the "cleanup" of the Stratford neighborhood, which, unfortunately, is a known haven for drug dealers and users and a high crime area.  As such, the Mayor initiated a "plan of action" to address these issues in or about June 2014.

29.     Throughout the course of Aspen's ownership of the Subject Property, there have been periodic inspections conducted by the City and HUD.  As is typical of all such inspections of large scale apartment buildings, the Subject Property has, from time to time, been required to abate and/or remediate certain alleged conditions found to be in violation of housing and/or building regulations. When Aspen has received any such notices of violations in the past, the violations have been promptly addressed and the deficiencies abated to the satisfaction of municipal and federal authorities.

30.     Some of the violations found by the City have been due in part to conditions within the units of which Aspen could not have been aware until they were either informed by the tenant or as part of an inspection.  Nonetheless, once these alleged violations were reported to Aspen, they were promptly addressed.

31.     The Housing Code of the City of Newark (the "Code") provides specific procedural guidelines to monitor and ensure that the City's residential buildings are fit for human habitation.  Specifically, §18:11-1.1of the Code states:

> (a)     The Director of the Department of Neighborhood and Recreational Services is hereby given the authority to exercise the powers prescribed by this chapter, and is

hereinafter hereby referred to in this chapter as the Public Officer.

(b)    The Public Officer may determine any building or dwelling unfit for human habitation or occupancy or use, by reason of its being so infested with disease, or by reason of its being in a condition dangerous to health or life, or to be likely to cause sickness among the occupants, or by reason of its being so decayed, unsanitary, unsafe or vermin-infested, that it creates a serious hazard to the health or safety of the occupants or the public, or by reason of lack of safe illumination, ventilation or sanitation facilities adequate to protect the health or safety of the occupants or the public, or likely to increase the risk of fire, dilapidation, destruction, accidents, or other calamities.

32.    The Code further sets forth a procedure for the NRS to address any alleged violations. Pursuant to §18:11-1.2(a), when the Public Officer receives a petition filed by a "public authority or by at least five (5) residents of the City of Newark" that charges that a building is unfit for human habitation, the Public Officer must conduct a preliminary investigation and thereafter, if his/her investigation substantiates the petition, the Public Officer "shall . . . cause to be served upon the owner . . . a complaint stating the charges in that respect and containing a notice that a hearing will be held before the Public Officer (or his/her designated agent) . . . not less than seven (7) days nor more than thirty (30) days after the serving of the complaint." The owner will be permitted to file an answer and give testimony regarding such charges. Id.

33.    Per §18:11-1.2(b), if the Public Officer determines the building is unfit for human habitation after the required notice and hearing, he/she "shall state in writing his/her findings of fact in support of such a determination and shall issue and cause to be served upon the owner thereof and parties in interest an order:

(1) Requiring the repair, alteration or improvement of the buildings to be made by the owner, within a reasonable

time, which time shall be set forth in the order or, at the
option of the owner, to vacate or have the building vacated
and closed within the time set forth in the order; and

(2) If the building is in such a condition as to make it
dangerous to the health and safety of persons on or near the
premises, and the owner fails to repair, alter or improve the
building within the time specified in the order, then the
owner shall be required to remove or demolish the building
within a reasonable time as specified in the order of
removal.

34.      Section 18:11-1.2(d) states that only **after** the owner fails to comply with an order

to repair, alter or improve, or at the option of the owner, to vacate and close the building, the

Public Officer may:

[C]ause such building to be repaired, altered or improved,
or to be vacated and closed; that the Public Officer may
cause to be posted on the main entrance of any building so
closed, a placard with the following words: "This building
is unfit for human habitation or occupancy or use; the use
or occupancy of this building is prohibited and unlawful."

35.      The Code does not provide for any internal appeals process of an order issued by

the Public Officer.  Rather, §18:11-1.6 states:

Any person aggrieved by an order issued by a Public
Officer under this chapter may, within thirty (30) days after
posting and service of such order, bring an action for
injunctive relief to restrain the Public Officer from carrying
out the provisions of the order and for any other appropriate
relief.  The court may proceed in the action in a summary
manner or otherwise.  The remedy herein shall be exclusive
and no person affected by an order of the Public Officer
shall be entitled to recover any damages for action taken
pursuant thereto, or because of noncompliance by any
person with any order of the Public Officer.

36.      On October 8, 2015, a series of four (4) municipal court Summons and

Complaints were issued for the Subject Property.  These Complaints alleged the following:

a)    Complaint No. 0714-S-2015-018401 ("401") for alleged violation of Newark Housing Code §18:11-1.1(b) relating to 2-8 Stratford Place;

b)    Complaint No. 0714-S-2015-018402 ("402") for alleged violation of Newark Housing Code §18:11-1.1(b) relating to 2-8 Stratford Place;

c)    Complaint No. 0714-S-2015-018403 ("403")for alleged a violation of Newark Housing Code §18:11-1.1(b) relating to 2-8 Stratford Place;

d)    Complaint No. 0714-S-21015-018404 ("404") for alleged a violation of Newark Housing Code §18:11-1.1(b) relating to 18-2 Stratford Place.

37.    Promptly thereafter, on October 9, 2015, counsel representing Aspen and the other named defendants cited in the municipal complaints Nos. 402 and 403, requested discovery from the City of the evidence that supported the alleged violations. The Court directed that the City provide the discovery by November 10, 2015, which it agreed to do.

38.    On November 6, 2015, Complaint Nos. 401, 402, and 403 were all dismissed. Complaint No. 404 has been adjourned with a new court date scheduled for December 5, 2015, and with discovery still not answered.  Thus, as at the date of this Complaint, there is no proven violation by Aspen of any municipal laws, and there is no evidence or finding from those un-adjudicated and dismissed complaints that could support the condemnation of a building that is in compliance with both state and federal law.

39.    Moreover, there has been **no** hearing, **no** written findings of fact by the City's Public Officer, **no** Order served on Aspen, and **no** timeframe set for the landlord to take corrective action and/or appeal the Public Officer's Order, as required by §18:11-1 *et. seq* of the Code.

40.     On October 22, 2015, prior to the dismissal of the Complaints, HUD's Real Estate Assessment Center ("REAC") conducted a comprehensive physical inspection of the Subject Property.  REAC periodically conducts physical property inspections of properties that are either owned or subsidized by HUD.  These periodic comprehensive inspections are conducted to ensure that assisted tenant-families have housing that is decent, safe, sanitary, and in good repair. As part of the comprehensive inspection protocol that was followed, the entire site, building exterior, building systems, common area, and certain individual units were inspected and given individual scores to reach an aggregate total score.

41.     Although some deficiencies were noted, the Subject Property (both buildings) received a **passing** score and REAC required that all deficiencies noted be corrected as part of the Subject Property's ongoing maintenance program.

42.     Aspen has fully abated the deficiencies noted in the HUD's inspection and the violations asserted by the City (many of which overlapped with the HUD findings).  The passing REAC Score and subsequent abatement of all alleged violations objectively demonstrates that the Subject Property is safe and habitable.  There has been absolutely no finding made to the contrary.

43.     Nonetheless, although the Subject Property passed HUD's comprehensive physical REAC inspection, and there have been no procedurally or substantively supported findings of any violations by the City, NHA, NRS, or any other City agency that would support a determination that the Subject Property poses and imminent health and safety risk, or is not habitable, NHA issued notices that required the residents of the Subject Property to attend informational sessions regarding the Section 8 housing program's Housing Choice Voucher Program ("HCVP") with respect to their options in choosing a different place to live and how

they could be assisted with same. Additionally, residents were required to provide NHA with personal information, including but not limited to, Social Security numbers, criminal history, and financial information. These sessions were purportedly designed to assist the Subject Property's residents with securing and moving out of the Subject Property and into other available housing.

44.     As a result, on November 4, 2015, counsel for Aspen issued a "Cease and Desist" letter to NHA, requesting that NHA stop distributing any further material to the residents of the Subject Property and to immediately and indefinitely cancel any meetings scheduled with such residents, and to return to Aspen any applications filled out by such residents.

45.     On November 4, 2015, the NHA, through its Chief Legal Officer, Ellen Michelle Harris, Esq., responded to Aspen's letter. NHA denied the allegations that it was distributing information improperly, agreed to cancel the scheduled informational sessions, but refused to return any applications for relocation; instead advising that the applications would be maintained in a locked cabinet for possible use in future litigation.

46.     On the same day that NHA responded to Aspen's Cease and Desist Letter, Patrick Council, the Director of the Department of Neighborhood and Recreational Services, served two (2) notices on HUD – without even providing a copy to plaintiff or its managing agent – which notices purportedly condemned the Subject Property (the "Condemnation Notices"). The Condemnation Notices, including identical language, were directed for 2 Stratford Place and 18 Stratford Place, respectively, and stated the following:

> Director Santa:
>
> Pursuant to **18:11-1.1(A)** of the City of Newark's Housing Code Ordinance, while serving in the capacity as Director of Neighborhood and Recreational Services, I am authorized by law to serve as Public Officer of the City of Newark, New Jersey.
>
> After a review of Public Records submitted by Code Enforcement, Health and Fire Department and several personal visits to the

referenced site, I am convinced that the dwelling is **unfit for human habitation or occupancy or use**.

After discussions with Mayor Baraka, Director of Health, Fire, Police, and Economic Development it has been jointly agreed that as Public Officer of the City of Newark, I hereby declare that the premises is **CONDEMNED effective WEDNESDAY, NOVEMBER 4, 2015 @ 11:52 A.M.**

Please notify all parties attached or connected to the referenced property address regarding this **formal notification** that the property has been declared **CONDEMNED AND UNFIT FOR HUMAN HABITATION OR USE**.

Should you have questions regarding this **formal notification**, please do not hesitate to contact me directly . . . .

47.    The Condemnation Notices were **never** served on Aspen. Nor do the Condemnation Notices –subsequently received by Aspen – include the "Court Filed Complaint" which was purportedly attached to the Condemnation Notice.

48.    Further, the Condemnation Notices are silent as to whether there were emergent circumstances which led to the issuance of the Condemnation Notices without following the procedure set forth in the City's Housing Code.

49.    In fact, to the contrary, the Condemnation Notices indicate that the Public Officer reviewed records and made "several" visits to the Subject Property, before skipping ahead to condemning the Subject Property without following any of the procedures and other safeguards required by City's Housing Code.

50.    Sometime during the week after the Condemnation Notices were served on HUD, the City, Mayor, NHA, and/or the NRS posted yet another notice on the doors of the Subject Property (the "Building Notice").

51.    The Building Notice states that Subject Property "is unfit for human habitation or occupancy or use; the use or occupancy of this building is prohibited and unlawful." This language is word for word the language that the Code directs should be included when such

notice is posted **after** an owner fails to comply with any orders issued by the Public Officer, which orders can only be issued **after** the conduct of a plenary hearing and the issuance of findings of fact based upon the evidence presented at the plenary hearing.

52.     The Building Notice also directed that the Subject Property must be vacated by **December 1, 2015.**

53.     On November 17, 2015, the Newark Department of Neighborhood and Recreational Services hand-delivered notices to each resident at the Subject Property notifying the residents of a meeting to be held on Thursday, November 19, 2015, to discuss the "relocation process." The November 17th notice further notified that "[a]ll residents are required to attend this important meeting" and that its purpose was "to discuss the plan of action to vacate the properties."

54.     Through the improper and unlawful actions described herein, defendants are engaged in an active plan and scheme, the purpose of which is to cause the Subject Property to become completely vacant on or before December 1, 2015, the next date on which rents are due. Unless this unlawful plan and scheme is stopped by this Court, defendants will succeed with their misguided and unlawful plan and scheme to cause all the tenants to vacate their apartments without the proper notice, hearing, findings of fact, order, and appeal process that the Code provides and requires.

55.     In addition to the irreparable harm that the tenants will suffer should they be forced out of their home, after the tenants vacate the Subject Property, rental payments will cease and Aspen shall suffer immediate and substantial irreparable harm. Indeed, with all economic benefits associated with its ownership and use of this highly valuable property ended by the

defendants' improper actions, Aspen will lose the Subject Property because it will be unable to pay the substantial mortgage and other carrying costs that it is obligated to pay.

56.     At all times relevant hereto, the Mayor is the primary public official who has claimed responsibility for establishing, controlling, guiding, dictating, and overseeing a project in the Stratford Neighborhood focused on improving the quality of life of the residents of the neighborhood, but under the guise of this project, he has actively engaged in conduct to unlawfully deprive Aspen of the lawful use and ownership of the Subject Property.

57.     At all times relevant hereto, Defendant Baye Adofo-Wilson has acted in concert with the City, the Mayor, NHA, and NRS to unlawfully deprive Aspen of the lawful use and ownership of the Subject Property.

58.     At all times relevant hereto, Defendant Keith D. Kinard has assisted in the conspiracy to deprive Aspen of the lawful use and ownership of the Subject Property.

59.     At all times relevant hereto, Defendant Clifford Godfrey has acted in concert with the City, the Mayor, NHA, and NRS, to unlawfully deprive Aspen of the lawful use and ownership of the Subject Property.

60.     At all times relevant hereto, Patrick Council has acted in concert with the City, the Mayor, NHA, and NRS to unlawfully deprive Aspen of the lawful use and ownership of the Subject Property.

61.     At all relevant times hereto, defendants have attempted to deprive Aspen of their rightful and lawful use and ownership of the Subject Property by condemning the Subject Property without following the proper procedure and/or without providing the proper compensation to Aspen for the seizure of the Subject Property.

## COUNT ONE

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (General Allegations)

62.     Aspen realleges and incorporates herein by reference the preceding allegations of this Complaint.

63.     In committing the acts complained of herein, defendants acted under color of state law to deprive Aspen of certain constitutionally protected rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, including, but not limited to: (a) the right not to be deprived of property without due process of law; (b) the right to just compensation for taking of property; and, (c) the right to equal protection of the laws.

64.     In violating Aspen's rights as set forth above and other rights that will be proven at trial, defendants acted under color of state law.

65.     As a direct and proximate result of the violation of their constitutional rights by the defendants, Aspen has suffered general and special damages as alleged in this Complaint and it is entitled to relief under 42 U.S.C. §1983.

66.     The conduct of defendants was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

67.     Unless defendants are immediately restrained and enjoined from continuing with any acts in furtherance of the notices of condemnation of the buildings that comprise the Subject Property, Aspen and its tenant-residents will be irreparably harmed.

## COUNT TWO

### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Deprivation of Property Without Due Process of Law)

68.     Aspen realleges and incorporates herein by reference the allegations set forth in preceding paragraphs of this Complaint.

69.     Each defendant, in concert and conspiracy with the other defendants, intentionally violated the civil rights of Aspen by their malicious and wanton disregard for Aspen's property rights.  Defendants' actions described herein amounted to the deprivation of property in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

70.     By and through their actions described herein, defendants actually and proximately inflicted an outrageous violation of constitutional rights upon Aspen, for which defendants are liable and for which Aspen seeks damages therefor.

71.     Defendants, either with the specific intent to violate Aspen's civil rights or with a reckless disregard of the probability of causing that violation, set about condemning the Subject Property without instituting the proper procedures as set forth by the City's own Code and moved to take Aspen's property without the proper notice, hearing, written findings of fact, issuing the proper order, and permitting any such appeal to be taken to the court. Defendants knew or should have known there were no exigent circumstances that permitted them to dispense with the proper procedural requirements and safeguards and that there was no adequate post-deprivation appeal and/or relief of which Aspen could avail in order to properly defend its constitutional rights.

72.     Unless the defendants are immediately restrained and enjoined from continuing with any acts in furtherance of the notices of condemnation of the apartment buildings that comprise the Subject Property, Aspen and its tenant-residents will be irreparably harmed.

## COUNT THREE
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Deprivation of Aspen' Substantive Due Process Rights)

73.     Aspen realleges and incorporates herein by reference the allegations set forth in preceding paragraphs of this Complaint.

74.     Each defendant, in concert and conspiracy with the other defendants, and with malicious and reckless disregard for Aspen's Constitutional rights, intentionally violated Aspen's right to substantive due process of law by and through their role in condemning the Subject Property with willful disregard for lawful procedures and knowingly depriving Aspen of the lawful use and possession of the Subject Property without an attempt to follow established procedures.

75.     By and through their actions described herein, defendants actually and proximately inflicted an outrageous violation of constitutional rights upon Aspen, for which defendants are liable and for which Aspen seeks damages therefor.

76.     Defendants conduct by condemning the Subject Property without even an attempt to follow the established procedure was arbitrary, irrational, and tainted by improper motive, and so egregious that it shocks the conscience.

77.     Unless defendants are immediately restrained and enjoined from continuing with any acts in furtherance of the notices of condemnation of the buildings that comprise the Subject Property, Aspen and its tenant-residents will be irreparably harmed.

## COUNT FOUR
### Violation of Civil Rights Pursuant to Title 42 U.S.C. §1983
### (Deprivation of Property Without Just Compensation)

78.     Aspen realleges and incorporates herein by reference the allegations set forth in preceding paragraphs of this Complaint.

79.     Each defendant, in concert and conspiracy with the other defendants, by and through their actions described herein, deprived Aspen of its property without just compensation, for which defendants are liable and Aspen seeks damages therefor.

80.     Aspen is entitled to the fair value of their property of which they have been deprived by defendants.

81.     Aspen seeks a judgment in the amount of the fair value of the Subject Property of which they have been deprived.

## COUNT FIVE

### New Jersey Civil Rights Act
### (N.J.S.A. 10:6-1 et. seq.)

82.     Aspen realleges and incorporates herein by reference the allegations set forth in preceding paragraphs of this Complaint.

83.     While acting under the color of state law, defendants, by and through their actions described herein, have deprived and/or interfered with Aspen's substantive due process, procedural due process, equal protection rights, and privileges or immunities secured by the Constitution or the laws of the United States.

84.     Accordingly, Aspen hereby brings a civil action for damages and other appropriate relief pursuant to the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.

85.     As a direct and proximate result of the actions and omissions of defendants described herein, Aspen suffered substantial losses.

## COUNT SIX

### (Inverse Condemnation)

86.     Aspen realleges and incorporates herein by reference the allegations set forth in preceding paragraphs of this Complaint.

87.     Defendants actions, including but not limited to, condemning the Subject Property without adhering to the proper procedural and substantive requirements, have deprived Aspen of any economic or beneficial use of the Subject Property to which Aspen is legally entitled.

88.     Defendants' actions constitute an unlawful taking of the Subject Property in violation of the United States Constitution and the New Jersey Constitution.

89.     Defendants have failed to compensate Aspen for the unlawful taking of the Subject Property in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I of the New Jersey Constitution.

90.     As a direct and proximate result of the actions and omissions of defendants described herein, Aspen has suffered substantial losses.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff Aspen Stratford Apartments, LP demands judgment against defendants, jointly and severally, as follows:

1.     Preliminarily restraining and enjoining defendants City of Newark, NHA and NRS, and their officials, agents and employees, from taking any action in furtherance of the notice of condemnation issued by said defendants with respect to the real property located at 2-8 Stratford Place and 18-22 Stratford Place, Newark, New Jersey.

2.     Preliminarily restraining and enjoining defendants City of Newark, NHA and NRS, and their officials, agents and employees from taking any action in furtherance of the plan implemented by said defendants to relocate the tenants of 2-8 Stratford Place and 18-22 Stratford Place, Newark, New Jersey;

3.     Preliminarily restraining and enjoining the defendants City of Newark, NHA and NRS, and their officials, agents and employees, from taking any action to prevent the continued

payment of monies due from the HUD to Aspen pursuant to the Housing Assistance Payments Contract between Aspen and HUD;

    4.    Awarding compensatory damages, exemplary and punitive damages, attorneys' fees and costs of suit, as well as any and all other relief to which Aspen may be entitled, in favor of Aspen and against defendants, jointly and severally.

Stuart Reiser

**SHAPIRO, CROLAND, REISER APFEL, & Di IORIO LLP**
Continental Plaza II
411 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-3900
(201) 488-9481 (Fax)
srteiser@shapiro-croland.com
Attorneys for Plaintiff,
Aspen Stratford Apartments LP

**DATED:**  November 20, 2015

## JURY DEMAND

Aspen hereby demands a jury in this action.

Stuart Reiser

**DATED:**  November 20, 2015

## VERIFICATION

I, Wayne Fox, certify as follows:

1.     I am the President of Wynmax Corp., the authorized agent of Aspen Group, Inc., which is the General Partner of plaintiff Aspen Stratford Apartments, LP. I make this verification from my personal knowledge.

2.     I have read the Verified Complaint attached hereto and hereby verify that the facts asserted therein are true, except where stated on information and belief, and then I believe those facts to be true.

3.     I verify under penalty of perjury that the foregoing statements made by me are true.

_____
Wayne Fox

Dated: November 20, 2015